UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| VICTOR VOE, by and through his parents and next friends, Vanessa Voe and Vance Voe; *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> THOMAS MANSFIELD, in his official capacity as Chief Executive Officer of the North Carolina Medical Board; *et al.*, <br><br> *Defendants*, <br><br> and <br><br> PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, <br><br> *Proposed Intervenors.* | Civil No. 1:23-CV-864-LCB-LPA |

### RESPONSE OF THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES AND SECRETARY KODY H. KINSLEY, M.P.P., TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

NOW COME Defendants, the North Carolina Department of Health and Human Services, and Kody H. Kinsley, M.P.P., in his official capacity as Secretary of the North Carolina Department of Health and Human Services (together, "DHHS"), by and through

undersigned counsel, and hereby respond to Plaintiffs' Motion for Preliminary Injunction (DE 14) (filed October 11, 2023), as follows.

## Statement of Undisputed Facts

Defendant DHHS is an administrative agency in the executive branch of the North Carolina government. DHHS is the "single state agency" with direct responsibility for administration of the state Medicaid plan, known as the North Carolina Medicaid program. 42 U.S.C. § 1396a(a)(5); N.C. Gen. Stat. § 108A-54 (2018); Compl. (DE 1) ¶ 20. Defendant Kody H. Kinsley, M.P.P. is the Secretary of DHHS. N.C. Gen. Stat. § 143B-139 (1997); Compl. ¶ 23. In this capacity, Secretary Kinsley oversees and directs all functions at DHHS, including its Medicaid operations. Among other responsibilities, Defendant Kinsley is responsible for ensuring that the operation of North Carolina's Medicaid program complies with both federal and state law, including any "parameters set by the General Assembly." N.C. Gen. Stat. § 108A-54(f) (2018); Compl. ¶ 23.

Medicaid is a jointly-funded federal-state that provides coverage for medical care for patients of limited economic means. 42 U.S.C. § 1396–1. If a state participates in Medicaid, it must comply with federally mandated standards. *Id.,* § 1396a. North Carolina Medicaid is a health program or activity that receives federal financial assistance. *See Kadel v. Folwell*, No. 1:19-cv-272, 2022 WL 17415050, at *2-3 (M.D.N.C. Dec. 5, 2022). North Carolina Medicaid supports the health and well-being of more than 2.3 million North Carolinians by providing critical health insurance coverage

for individuals and families with low income, as well as medically fragile children, children adopted through foster care, and people with severe disabilities. Compl. ¶ 21.

For many years, North Carolina's Medicaid system paid for medically necessary treatments for gender dysphoria, including the provision of puberty-blocking drugs and cross-sex hormones. On August 16, 2023, House Bill 808 (H.B. 808) became law. Compl. ¶ 2. Among other provisions, the law prohibits healthcare professionals from providing certain medical care to transgender individuals who are younger than 18 years of age. *Id.*, §§ 90-21.51; 90-21.150(8). The law also prohibits the use of state funds, directly or indirectly, to support the provision of certain gender-affirming care or its coverage by a governmental health or insurance plan. *Id.,* § 143C-6-5.6(b).

On October 11, 2023, Plaintiffs filed their Complaint challenging H.B. 808. On the same date, Plaintiffs filed a motion for preliminary injunction and supporting memorandum. (DE 14, 14-1 through 14-9). On October 24, 2023, the Court granted the motion of General Assembly President Pro Tempore Berger and Speaker Moore to intervene in this matter. On October 27, 2023, the United States filed a Statement of Interest. (DE 31).

## ARGUMENT

In Count One and Count Two of the Complaint, Plaintiffs allege that H.B. 808 discriminates against them and other transgender adolescents based on their transgender status and sex, in violation of the Equal Protection Clause and Due Process Clause of the

United States Constitution.  *See* Compl. ¶¶ 159-175 (Equal Protection claim), ¶¶ 176-184 (Due Process claim); *see also* Motion for Preliminary Injunction.  DHHS does not put forth an argument on Count One or Count Two of the Complaint, nor does DHHS put forth an argument on Plaintiffs' motion for injunctive relief pertaining to these constitutional claims.

Count Three alleges that H.B. 808 violates Section 1557 of the Affordable Care Act (ACA), 42 U.S.C. § 18116.  *See* Compl. ¶¶ 185-196; *see also* Motion for Preliminary Injunction, at 17-18.  As explained below, DHHS believes that H.B. 808 directly conflicts with one or more provisions of federal law, including Section 1557 of the Affordable Care Act.  DHHS believes that it is not possible for it to comply with H.B. 808 and also comply with the mandates of federal law applicable to the North Carolina Medicaid program.

DHHS therefore respectfully asks the Court to clarify the proper scope of H.B. 808 and, if necessary, rule that H.B. 808 may only be enforced to the extent that it does not require DHHS to violate applicable federal authorities.

**1. H.B. 808 is in Conflict with Section 1557 of the ACA.**

H.B. 808 is in conflict with the anti-discrimination mandate in Section 1557 the ACA.  DHHS believes that compliance with H.B. 808 would require DHHS to violate Section 1557.

The ACA "aims to increase the number of Americans covered by health

4

insurance" through the creation of "a comprehensive national plan to provide universal health insurance coverage." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012). An important component of the ACA is the anti-discrimination mandate in section 1557. *Fain v. Crouch*, 618 F. Supp. 3d 313, 330 (S.D.W. Va. 2022).

Section 1557 of the ACA provides that "an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 [or] title IX of the Education Amendments of 1972,… be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance…." 42 U.S.C. § 18116(a). Because the ACA expressly incorporates Title VI and Title IX, "[t]he Fourth Circuit looks to Title VII … to guide the 'evaluation of claims under Title IX.'" *Kadel v. Folwell*, 620 F. Supp. 3d 339, 388 (M.D.N.C. 2022) (Biggs, J.); *see also Hammons v. Univ. of Md. Med. Sys. Corp.,* 551 F. Supp. 3d 567, 590 (D. Md. 2021), *reconsideration denied*, No. CV DKC 20-2088, 2021 WL 4951921 (D. Md. Oct. 25, 2021) (*quoting Grimm v. Glouster Cty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir.), *as amended* (Aug. 28, 2020), *cert denied*, 141 S. Ct. 2878 (2021)).

Title VII prohibits employment discrimination "because of" an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020), the Supreme Court interpreted Title VII and held that classifications on the basis of sex, including homosexuality or transgender

status, necessarily constitute discrimination on the basis of sex. *Id*., at 1743 ("For an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex"). Such classifications based on sex or transgender statute violate Title VII. *See Kadel*, 620 F. Supp. 3d at 388. It follows that Section 1557 prohibits discrimination based on sex in healthcare. *Kadel*, 2022 WL 17415050, at *3 (citing *Grimm*, 972 F.3d at 608)).

In sum, the ACA prohibits discrimination "on the basis of sex." Discrimination on the basis of nonconformity with sex stereotypes, transgender status, gender, gender identity, gender transition, and sex characteristics are all forms of discrimination encompassed by the anti-discrimination mandate of Section 1557. A covered entity, such as DHHS, cannot provide or administer health coverage that categorically prohibits coverage for gender-affirming medical care or otherwise impose limitations or restrictions on coverage for specific health services related to gender transition if such limitation or restriction results in discrimination on the basis of sex. 42 U.S.C. § 18116(a).

Here, H.B. 808 clearly draws distinctions on the basis of biological sex and transgender status. The law defines the terms "biological sex," "gender," "gender reassignment surgery," "gender transition," and "surgical gender transition procedure" all by reference to sex and sexual characteristics. *See* § 90-21.150(1)(3)(4)(5) These

classifications cannot be stated in the law or effectuated in practice without referencing sex. *Kadel*, 2022 WL 17415050, at 3 (citing *Grimm*, 972 F.3d at 608). For example, section 143C-6-5.5 disallows the use of any state funds, directly or indirectly, "to provide puberty-blocking drugs or cross-sex hormones to a minor, or to support the administration of any governmental health plan or government-offered insurance policy offering surgical gender transition procedures, puberty-blocking drugs, or cross-sex hormones to a minor." H.B. 808 thus prohibits DHHS from administering Medicaid coverage for gender-affirming medical care to minors, including transgender adolescents with gender dysphoria. *Id*.

The conflict is that H.B. 808 prohibits North Carolina Medicaid and DHHS from providing certain medically necessary medical care to transgender individuals, while at the same time, federal law including Section 1557 requires DHHS and North Carolina Medicaid to provide coverage for this care to qualified Medicaid beneficiaries.

This conflict of laws puts DHHS at risk. State Medicaid programs that violate Section 1557 risk the loss of federal funding, civil enforcement proceedings brought by the federal government, civil lawsuits, debarment from doing business with the federal government, False Claims Act lawsuits, and criminal penalties. *See*, *e.g.*, 20 U.S.C. § 1682; *see also Jolley v. Riverwoods Behav. Health, LLC*, No. 1:21-CV-00561-WMR, 2021 WL 6752161, at *5-6 (N.D. Ga. Aug. 30, 2021) (slip op.) (denying motion to dismiss private claim of Section 1557 ACA discrimination based on transgender status);

*Hammons*, 551 F. Supp. 3d at 592 (finding plaintiff pled Section 1557 discrimination where hospital refused to perform hysterectomy to treat gender dysphoria).

DHHS therefore respectfully asks the Court to clarify the proper scope of H.B. 808 in light of the anti-discrimination provisions of Section 1557 of the ACA.

### 2. H.B. 808 is in Conflict with the Early and Periodic Screening, Diagnostic, and Treatment Benefit.

DHHS believes that H.B. 808 also conflicts with a related provision of federal Medicaid authority, known as the Early and Periodic Screening, Diagnostic, and Treatment benefit ("EPSDT"). *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B), 1396d(r)(5), and 1396a(a)(43)(C). DHHS cannot comply with both the state law and the federal EPSDT mandates.

When a State elects to adopt a Medicaid program, it must administer a state plan that meets all federal requirements. One requirement is that every participating State must have an EPSDT program. *See* 79 Stat. 343, as amended, 42 U.S.C. §§ 1396a(a)(43), 1396d(r). EPSDT programs provide comprehensive and preventive health care services for children under age 21 who are enrolled in Medicaid. As the Centers for Medicare and Medicaid Services explains:

> EPSDT provides a comprehensive array of prevention, diagnostic, and treatment services for low-income infants, children and adolescents under age 21, as specified in Section 1905(r) of the Social Security Act (the Act).
>
> The EPSDT benefit is more robust than the Medicaid benefit for adults and is designed to assure that children receive early detection

> and care, so that health problems are averted or diagnosed and treated as early as possible. The goal of EPSDT is to assure that individual children get the health care they need when they need it – the right care to the right child at the right time in the right setting.

*EPSDT -- A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents*, at 1 (June 1, 2014), https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/epsdt_coverage_guide_174.pdf (last accessed Oct. 31, 2023).

Under EPSDT, eligible children must receive all services and treatments covered by the Medicaid Act that are necessary "to correct or ameliorate" any physical and mental illnesses and conditions discovered during a screening. *See* 42 U.S.C. § 1396d(r)(5); *see also Moore v. Reese*, 637 F.3d 1220, 1235 (11th Cir. 2011). The fundamental purpose of the EPSDT requirements is to ensure that Medicaid recipients under age 21 receive the "health care they need when they need it." *M.H. v. Berry*, 2021 WL 1192938, *6 (N.D. Ga. 2021) (cleaned up). Specifically, they require each state Medicaid program to cover any service allowable under § 1396d(a) if "necessary . . . to correct or ameliorate" health conditions regardless of whether the state covers the service for adults. 42 U.S.C. §§ 1396d(r)(5), 1396a(a)(10)(A), 1396d(a)(4)(B); *see, e.g., Moore*, 637 F.3d at 1233-34; *S.D. v. Hood*, 391 F.3d 581, 589-93 (5th Cir. 2004). "The EPSDT obligation is thus extremely broad." *Katie A. ex rel. Ludin v. L.A. County*, 481 F.3d 1150, 1154 (9th Cir. 2007); *see also Smith v. Benson*, 703 F. Supp. 2d 1262, 1269-70 (S.D. Fla. 2010). And "there is a very strong inference to be inclusive rather than exclusive" when determining the meaning of "correct or ameliorate." *Ekloff v. Rodgers*, 443 F. Supp. 2d 1173, 1180

(D. Ariz. 2006). As applicable to North Carolina Medicaid, the EPSDT provisions require DHHS to cover all medically necessary gender-affirming healthcare services barred by H.B. 808. This includes, for example, dispensing of "puberty-blocking drugs and cross-sex hormones" to a minor who is a qualified Medicaid beneficiary, when medically necessary. All fall within the scope of benefits listed in § 1396d(a). *See* 42 U.S.C. § 1396d(a)(1) (inpatient hospital services), (2)(A) (outpatient hospital services), (5)(A) (physicians' services), (12) (prescribed drugs). And, for many transgender adolescents, the services are "necessary . . . to correct or ameliorate" their gender dysphoria. *Id*. § 1396d(r)(5).[1]

As above, the conflict is that H.B. 808 prohibits North Carolina Medicaid and DHHS from providing certain medical care to transgender individuals, younger than 18 years of age, while at the same time, the EPSDT requirements provide that North Carolina Medicaid must provide this care to individuals up to age 21 when it is verified to be medically necessary. State law and federal law are in conflict here. As discussed above, compliance with state law therefore creates risks for DHHS of noncompliance with federal law, which carries heavy repercussions.

---

[1] 10A NCAC 25A .0201 provides, "Pursuant to the State [Medicaid] Plan, all medical services performed shall be medically necessary and may not be experimental in nature. Medical necessity shall be determined by generally accepted North Carolina community practice standards as verified by independent Medicaid consultants." Here, H.B 808 includes certain medical predeterminations and thus prevents an individualized determination of medical necessity by reference to local practice standards, as verified by independent consultants. *Id*. This may prevent the provision of services that are medically necessary for qualified Medicaid beneficiaries.

**CONCLUSION**

For the reasons stated above, DHHS and Secretary Kinsley respectfully asks the Court to clarify the proper scope of H.B. 808 and, if necessary, rule that H.B. 808 may only be enforced to the extent that it does not require DHHS to violate applicable federal authorities.

Respectfully submitted, this 3rd day of November, 2023.

JOSHUA H. STEIN
ATTORNEY GENERAL

/s/ Colleen M. Crowley
Colleen M. Crowley
Special Deputy Attorney General
N.C. Bar No. 25375
Email: CCrowley@ncdoj.gov

N.C. Dept. of Justice
P.O. Box 629
Raleigh, NC 27602
Phone: 919-716-6400

*Attorney for DHHS and Sec. Kody H. Kinsley, M.P.P. in his official capacity*