## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Durham Division

VICTOR VOE, *et al.*,

        *Plaintiffs*,

    v.

THOMAS MANSFIELD, *et al.*,

        *Defendants*,

    and

PHILIP E. BERGER, *et al.*,

        *Intervenor-Defendants*.

Civil No. 1:23-CV-864-LCB-LPA

## REPLY IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

RESPONSE TO INTERVENORS' STATEMENT OF FACTS......................................................1

ARGUMENT .............................................................................................................................2

    I.     Plaintiffs Have Standing ............................................................................................2

    II.    Plaintiffs Have Demonstrated a Likelihood of
          Success on the Merits ................................................................................................5

             A.    HB808 Discriminates Based Both on Sex
                    and Transgender Status ....................................................................5

             B.    HB808 Discriminates Both Facially
                    and Intentionally ...............................................................................7

             C.    HB808 Likely Violates the Fundamental Right
                    to Parental Autonomy.......................................................................7

             D.    HB808 Fails Any Level of Review .........................................................8

              E.    HB808 Likely Violates the Affordable Care Act ...................................9

    III.    Plaintiffs Have Satisfied the Remaining Preliminary
          Injunction Factors .................................................................................................10

    IV.    Broad Injunctive Relief Is Appropriate................................................................12

    CONCLUSION.........................................................................................................................13

Case 1:23-cv-00864-LCB-LPA    Document 45    Filed 11/17/23    Page 2 of 18

## RESPONSE TO INTERVENORS' STATEMENT OF FACTS

Intervenors pin their defense on a single un-executed declaration from psychologist James Cantor. Dkt. 37-1. But courts have discredited his testimony because his expertise is in atypical attraction such as pedophilia, not medically necessary gender-affirming care ("GAC"). *See, e.g., Koe v. Noggle*, 2023 WL 5339281, at *21 n.28 (N.D. Ga. Aug. 20, 2023) (assigning Dr. Cantor's views "less weight" because he "is not a physician and has no experience treating gender dysphoria in youth"; collecting authorities). Thus, the sole witness upon which Intervenors rely lacks any notable experience, let alone expertise, with GAC,[1] rendering his testimony similar to that rejected in *Kadel v. Folwell*, 620 F.Supp.3d 339, 360-71 (M.D.N.C. 2022).

Intervenors' "statement of facts" offers three key distortions about GAC. First, they point to the fact that an increased number of transgender adolescents receive this care, insinuating that the increase may come from "social contagion" or social media. Opp. 2-3. There is no scientific support for these theories, and instead clinical experience shows that increased access to care is a result of reducing stigma and discriminatory barriers to coverage. Karasic Rebuttal ¶35; *Kadel*, 620 F.Supp.3d at 365-67 (rejecting "social contagion" theory as mere "hypothesis").

Second, Intervenors argue that some GAC may have side effects including affecting fertility. Opp. 3-5. But the side effects are easily managed, and GAC is only provided

---

[1]  As Dr. Cantor testified recently, he has never treated a patient under 16 or conducted original research on GAC's efficacy or safety. Richardson Exs. A-C.

1

after a provider determines that the benefits outweigh any risk and obtains informed consent. Adkins ¶¶60, 64; Adkins Rebuttal ¶20, 23. Moreover, the State cannot invoke side effects to ban "gender transition" when the same treatments, with the same side effects, remain available to cisgender adolescents.

Third, Intervenors critique the evidence base supporting GAC. Opp. 5. But the quality of the evidence supporting GAC is comparable to that supporting many other pediatric interventions. Antommaria ¶¶30-39. Nor have any of the European countries that Intervenors invoke banned GAC. Antommaria Rebuttal ¶¶19-24. And Intervenors' suggestion that gender dysphoria will simply desist if treatment is withheld has no basis in modern scientific research. Karasic Rebuttal ¶15. Gender-affirming treatment is the standard of care because regret is exceedingly rare, Karasic Rebuttal ¶¶45-46, and the treatment has such high efficacy in relieving suffering from gender dysphoria, Olson-Kennedy ¶¶45-65.

## ARGUMENT

## I. Plaintiffs Have Standing.

*Voe Family:* Intervenors argue Victor is not facing imminent injury because he "has not even begun puberty." Opp. 8. But puberty will inevitably begin, and he will need GnRHa at that time. Adkins Rebuttal ¶34.[2] Thus, his injury is "certainly impending," or

---

[2] Notwithstanding Intervenors' suggestion otherwise (Opp. 9 n.1), Plaintiffs are permitted to submit affidavits responding to Intervenors' opposition brief. *See*, *e.g.*, *Atlantic Diving Supply, Inc. v. Basnight*, 2022 WL 18635840, at *3 (E.D. Va. Aug. 25, 2022).

at the very least, there is a "substantial risk" that it will occur.  *John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.,* 78 F.4th 622, 629 (4th Cir. 2023); *see also South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019).

Intervenors argue that Victor's harm is not redressable because he has not identified a provider who will prescribe GnRHa if relief is granted.  Opp. 9-10.  While Intervenors speculate that Dr. Adkins will not prescribe GnRHa to adolescents under 12 (Opp. 9), that is incorrect.  Adkins ¶42; Adkins Rebuttal ¶10.  Dr. Adkins will prescribe GnRHa for transgender adolescents if the Court issues the injunction.[3]  Adkins Rebuttal ¶35.

*Doe Family:* PFLAG member Joy is on the cusp of puberty and will need GnRHa within months, Doe ¶¶12, 18, meaning the Ban will cause her and her parents imminent injury.

*Dr. Smith:* Dr. Smith has third-party standing on behalf of his transgender adolescent patients, including those in Medicaid.  The Supreme Court "ha[s] been quite forgiving" with third-party standing in certain circumstances, including "when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights."  *Kowalski v. Tesmer*, 543 U.S. 125, 129-131 (2004) (cleaned up); *see also Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 216 (4th Cir. 2020).  That is the case here.

---

[3]  Intervenors suggest Plaintiffs' requested relief differs in the Complaint and the Proposed Order.  Opp. 6.  Plaintiffs amended the Proposed Order to avoid any confusion.  Dkt. 42.

Dr. Smith has made the "two additional showings" needed for third-party standing. *See Kowalski*, 543 U.S. at 129-130. While Intervenors argue that some parents have a closer relationship to affected adolescents than Dr. Smith (Opp. 11), that is irrelevant. His doctor-patient relationship is sufficiently close for third-party standing. *See* Smith Supp. ¶11; *Aid for Women v. Foulston*, 441 F.3d 1101, 1112-13 (10th Cir. 2006). Multiple courts have found third-party standing in the GAC context. *See, e.g., Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F.Supp.3d 1, 34-36 (D.D.C. 2020); *City & Cnty. of San Francisco v. Azar*, 411 F.Supp.3d 1001, 1011 (N.D. Cal. 2019). It is no doubt closer than other relationships that have been held to confer standing. *See, e.g., Maryland Shall Issue*, 971 F.3d at 216 (gun dealer and gun purchasers).

Despite Intervenors' contrary argument (Opp. 10-11), transgender adolescents' ability to protect their own interests is hindered. Many keep their transgender status confidential to avoid harassment and violence. Smith Supp. ¶4; *Whitman-Walker*, 485 F.Supp.3d at 36. While they may be permitted to use a fictitious name, their participation could reveal their status to people in their daily lives. *See* Smith ¶28; Smith Supp. ¶4.

Intervenors speculate that the injury suffered by Dr. Smith's patients lacks redressability. Opp. 11-12. But Dr. Smith testifies that if HB808's sections 1 and 3 are enjoined, he will provide GAC. Smith Supp. ¶¶14-16.

*PFLAG and GLMA:* Intervenors argue that PFLAG and GLMA have not identified a member with standing in their own right. Opp. 12. Because the Voe and Doe families are PFLAG members with standing, and Dr. Smith is a GLMA member with standing, their

4

argument fails.

## II. Plaintiffs Have Demonstrated a Likelihood of Success on the Merits.

### A. HB808 Discriminates Based Both on Sex and Transgender Status.

*Sex discrimination:* Intervenors argue that sex discrimination only covers differential treatment of women and men as groups. Opp. 13. But as the Fourth Circuit has affirmed repeatedly, the "imposition of gender-based restrictions on one sex is not a defense to . . . discrimination against another sex." *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 125 (4th Cir. 2022); *see also Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 609 (4th Cir. 2020).

Second, Intervenors argue that HB808 is best understood as targeting "specific medical interventions," not transgender people. Opp. 13. But HB808 is not a neutral regulation of medical care; it targets this medical care only for "gender transition," while leaving the same treatments available to cisgender adolescents. N.C. Gen. Stat. § 90-21.151. Because gender dysphoria is "very closely connected" to being transgender, treating GAC differently likely "discriminate[s] against transgender people as a class." *Williams v. Kincaid*, 45 F.4th 759, 772 (4th Cir. 2022) (cleaned up).

*Dobbs* and *Geduldig* do not change the analysis. The laws upheld in those cases were facially neutral; HB808 is not. *See Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974) (exclusion based on pregnancy is "objectively identifiable"). Additionally, *Geduldig* and *Dobbs* clarify that an exclusion that affects only one sex is not discriminatory where no one is treated differently. Here, only transgender minors are denied this medical care, while

5

the same treatments remain available to cisgender adolescents. Adkins ¶¶56-58 (If an adolescent conforms with their sex assigned at birth, they can access the same care.).

Intervenors' only response to Plaintiffs' sex stereotyping theory is to point to "physical differences" between men and women. Opp. 14. But all sex-based classifications, including those relating to physiological characteristics, trigger heightened scrutiny. *Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001); *United States v. Virginia*, 518 U.S. 515, 534 (1996). Because HB808 prohibits medical care for gender transition, it "punish[es] transgender persons for gender non-conformity," thus relying on impermissible stereotypes. *Grimm*, 972 F.3d at 608.[4]

*Transgender status discrimination:* Intervenors claim HB808 does not discriminate based on transgender status because it prohibits gender transition for transgender and non-transgender adolescents alike. But the "proper focus . . . is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *City of L.A., Calif. v. Patel*, 576 U.S. 409, 418 (2015). Indeed, *Grimm* rejected a similar argument. 972 F.3d at 609.

Intervenors claim that "gender dysphoria is not a proxy for transgender status," Opp. 15, but the Fourth Circuit has held otherwise. *See Williams*, 45 F.4th at 772; *Kadel*, 620 F.Supp.3d at 377.[5] And despite Intervenors' distortions (Opp. 15-16), the expert testimony

---

[4] That diagnosing gender dysphoria involves assessing whether a minor displays behaviors typical of a particular gender does not transform HB808 into a law protecting gender equality. Opp. 14-15. Instead, HB808's insistence that minors conform to their sex assigned at birth evinces stereotypes. *Kadel*, 620 F.Supp.3d at 376.

[5] The fact that *Williams* was engaging in constitutional avoidance analysis is irrelevant. Lower courts are bound by the reasoning of higher courts.

is fully consistent with *Williams*' and *Kadel*'s analyses. *See, e.g.*, Olson-Kennedy ¶30. Finally, Intervenors' fiction that HB808 prohibits gender transition regardless of whether a minor is transgender or has gender dysphoria should be disregarded. "[B]y definition, a transgender person is a person who experiences a misalignment between assigned birth sex and a person's internal sense of their gender." *Id.*

**B. HB808 Discriminates Both Facially and Intentionally.**

"No inquiry into legislative purpose is necessary" when the classification "appears on the face" of a law. *Shaw v. Reno*, 509 U.S. 630, 642 (1993). Because the challenged "Act to Prohibit Gender Transition" expressly targets treatments relating to sex, it is facially "based upon a sex-classification." *Whitaker v. Kenosha Unified Sch. Dist.*, 858 F.3d 1034, 1051 (7th Cir. 2017). But discriminatory intent is also plain to see. HB808 itself makes clear it was passed "'because of,' not merely 'in spite of,'" its effects on transgender youth, i.e., to enforce state-mandated gender conformity. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). And while anti-transgender bias was certainly present among bill sponsors,[6] animus is not required to show intent. *Cf. Frontiero v. Richardson*, 411 U.S. 677, 684 (1973).

**C. HB808 Likely Violates the Fundamental Right to Parental Autonomy.**

Due process protects the fundamental right of parents to direct their children's medical care. Parents' "plenary authority to seek such care for their children, subject to a

---

[6] *See* Dkt. 1¶¶ 89-93 (referring to GAC as "atrocities" and implying that providers are "prey[ing] upon children").

physician's independent examination and medical judgment," *Parham v. J.R.*, 442 U.S. 584, 604 (1979), includes GAC. Intervenors try to rewrite the test, claiming one must show that this *specific* form of treatment is deeply rooted in the nation's history, but this is contrary to binding authority. *Compare* Opp. 17-18 *with Bostic v. Schaefer*, 760 F.3d 352, 376-77 (4th Cir. 2014) (Same-sex couples sought the right to marry, not a new right of same-sex marriage.).

The question is not whether due process protects a right to a specific medical procedure, but whether it protects the fundamental right of parents to make medical decisions for their children. The law makes clear that it does. *See*, *e.g.*, *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000); *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 419 (6th Cir. 2019); *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1197 (10th Cir. 2010).[7]

### D. HB808 Fails Any Level of Review.

Intervenors' purported concerns about the efficacy of GAC are unsupported. Intervenors' lone expert has been found not credible, *supra*, and nothing about his testimony changes that GAC is supported by decades of peer-reviewed literature and every major medical organization. Adkins ¶28. Moreover, Intervenors' concerns are belied by HB808's exemption allowing GAC if it is part of an existing course of care, and the State

---

[7] This deeply rooted parental right is not circumscribed by any separate right of individuals to obtain medical care on their own behalf or by FDA policies. Opp. 18.

itself has provided GAC as medically necessary care for "many years" to Medicaid participants. Dkt. 36 at 3, 10 n.1.

Despite Intervenors' concerns about side effects (Opp. 19), it is also true "that gender dysphoria is a serious diagnosis that . . . can lead to self-mutilation and suicide." *Kadel*, 620 F.Supp.3d at 380. As Plaintiffs explained (Dkt. 14-1 at 12-17), there is not even a rational basis for stripping transgender adolescents of standard-of-care treatment, while leaving the same treatments unregulated for cisgender adolescents—and HB808 certainly cannot survive heightened scrutiny where the State's interests can be "protected by means that do not draw such an inflexible gender-based distinction." *Kadel*, 620 F.Supp.3d at 381 (cleaned up).

### E. HB808 Likely Violates the Affordable Care Act.

The agency administering NC Medicaid agrees it is bound by the ACA, that HB808 "directly conflicts" with the ACA, and that it is "not possible" to comply with both laws. Dkt. 36 at 4. This is because DHHS understands that the ACA "requires" it to not discriminate based on sex, and the conflict posed by HB808 puts DHHS "at risk" of financial, criminal, and other "heavy" repercussions. *Id.* at 7, 10. DHHS agrees HB808 should be preliminarily enjoined to eliminate conflicts between HB808 and the ACA. *Id.* at 4.

The Fourth Circuit has already held that *Bostock* applies to Title IX claims. *Peltier*, 37 F.4th at 130 n.22; *Grimm*, 972 F.3d at 616. This Court correctly followed that analysis in *Kadel*, which also applies here. 620 F.Supp.3d at 388; *Fain v. Crouch*, 618 F.Supp.3d

9

313, 330 (S.D. W. Va. 2022). Intervenors argue that Title IX supposedly acknowledges a "biological binary." Opp. 21. But Title IX is a broad, remedial statute that protects people beyond rigid, binary notions of sex. Regardless, Plaintiffs' claims meet even the most binary conception of sex discrimination as GAC is banned if it diverges from one's assigned sex, and permitted if it conforms.

It is no defense that HB808 will no longer target transgender adolescents for discrimination after they reach the age of majority. The ACA has no "minors only" carve-out but instead prohibits *all* discrimination based on sex. Intervenors make glancing references to the "budget" and "policy choice," but neither is a defense to Title IX or ACA violations. Opp. 20. Under Section 1557, "it is *always* unlawful to discriminate among persons even in part" based on sex. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 309 (2023) (Gorsuch, J., concurring) (emphasis in original).

## III. Plaintiffs Have Satisfied the Remaining Preliminary Injunction Factors.

Plaintiffs have demonstrated that they are likely to suffer irreparable harm, including violation of their constitutional rights and the denial of medically necessary care, absent preliminary relief. *See* Pls.' Br. 21-24; Karasic ¶¶102, 105; Olson-Kennedy ¶¶76, 78.

Plaintiffs have shown that they will likely suffer harm before a final judgment. Dr. Smith is currently having to deny GAC to at least three of his transgender adolescent patients. Smith Supp. ¶9. Dr. Smith has four additional transgender adolescent Medicaid

patients who have been receiving hormones, and no longer have coverage because of HB808's Section 3. Smith Supp. ¶10. Other GLMA members' patients face similar harm. *See* Sheldon ¶¶19-20.

Joy's lab results show that she is at the cusp of Tanner Stage 2 and will need GnRHa within months. Doe ¶12. And, while Dr. Adkins expects Victor to need GnRHa within the next 1.5 to 2 years, it is difficult to precisely predict when his puberty will begin. Adkins Rebuttal ¶34. Given that the median time between filing and trial in federal civil cases is nearly three years,[8] Victor, Joy, and their parents are likely to suffer irreparable harm absent preliminary relief. *Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008); *see also Doe v. Ladapo*, 2023 WL 3833848 at *6, 16 (N.D. Fla. June 6, 2023); Bond ¶¶13-16.

Intervenors fare no better with the balance of equities and public interest, as they incorrectly assume HB808 is a valid exercise of their power. Opp. 21. The State has no interest in enforcing a statute that is likely unlawful. Pls.' Br. 24. Intervenors wrongly suggest that the eight-week period between the law's enactment and Plaintiffs' filing warrants withholding relief. Opp. 1, 21. But Plaintiffs exhibited "reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). "[I]t is reasonable for a litigant to get its ducks in a row before coming to court, and a litigant should not be punished for giving itself time to investigate and prepare its case . . . ." *Fleet Feet, Inc. v. Nike Inc.*, 419

---

[8] *See* U.S. District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf.

F.Supp.3d 919, 947 (M.D.N.C. 2019) (subsequent history omitted). Plaintiffs' minimal delay in seeking relief does not tilt the equities in favor of Intervenors. *See*, *e.g.*, *Carcaño v. McCrory*, 203 F.Supp.3d 615, 649-650 (M.D.N.C. 2016) (granting preliminary injunction despite seven-week delay); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 n.12 (9th Cir. 2013).

## IV. Broad Injunctive Relief Is Appropriate.

The scope of injunctive relief "is dictated by the extent of the violation," which here extends to all parents and their transgender children denied GAC. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).[9] Intervenors' claim that only puberty blockers are at issue because that is the care sought by Victor Voe, Opp. 23, ignores that Dr. Smith sues on behalf of his patients who are also seeking gender-affirming hormones. And contrary to Intervenors' claim, Opp. 23, Dr. Smith *has* testified to the loss of ability to treat multiple specific patients. Smith Supp. ¶¶9-10.

Intervenors suggest that unless *all members* of PFLAG require relief, *no member* of PFLAG should obtain relief, but this lacks support in the law. Opp. 23. Intervenors also speculate that granting GLMA relief will allow doctors to override the will of objecting parents. *Id.* Pure, unsupported conjecture that a doctor might violate the standard of care, which requires parental consent, supplies no reason to deny relief to GLMA's members. Similarly, Intervenors argue that facial relief does not apply because the State could ban

---

[9] Contrary to Intervenors' allegation, PFLAG challenges Sections 1 and 3 of the law, not just Section 1.

care falling below the standard of care—but that is not the Ban they enacted, and provides no reason to deny relief to the organizational plaintiffs whose members seek to provide treatment in accordance with the standards of care.  Opp. 24.

## CONCLUSION

Plaintiffs respectfully request that the Court preliminarily enjoin enforcement of Sections 1 and 3 of HB808.

\* \* \*

Respectfully submitted,

/s/ Amy E. Richardson
Amy E. Richardson (N.C. Bar 28768)
Lauren E. Snyder (N.C. Bar 54150)
HWG LLP
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601
Telephone: (919) 429-7386
Facsimile: (202) 730-1301
arichardson@hwglaw.com
lsnyder@hwglaw.com

Deepika H. Ravi*
HWG LLP
919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Telephone: (202) 730-1300
Facsimile: (202) 730-1301
dravi@hwglaw.com

Dmitriy Tishyevich*
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue
New York, NY 10017-3852
Phone: (212) 547-5534
Facsimile: (646) 417-7668
dtishyevich@mwe.com

Anna Fosberg*
MCDERMOTT WILL & EMERY
The Brandywine Bldg.
1000 N West Street, Suite 1400
Wilmington, DE 19801
Phone: (302) 485-3936
Facsimile: (302) 351-8711
afosberg@mwe.com

Dated: November 17, 2023

Tara L. Borelli*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
1 West Court Square, Ste. 105
Decatur, GA 30030
Telephone: (404) 897-1880
Facsimile: (404) 897-1884
tborelli@lambdalegal.org

Omar Gonzalez-Pagan*
Sruti J. Swaminathan*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: (212) 809-8585
Facsimile: (212) 658-9721
ogonzalez-pagan@lambdalegal.org
sswaminathan@lambdalegal.org

Abigail Coursolle*
NATIONAL HEALTH LAW PROGRAM
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
Telephone: (310) 736-1652
coursolle@healthlaw.org

Catherine McKee*
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
Telephone: (984) 278-7666
mckee@healthlaw.org

* Appearing by notice of special
appearance pursuant to L.R. 83.1(d).

*Counsel for Plaintiffs*

14

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing complies with the type-volume requirements of L.R. 7.3(d)(1) and contains 3,125 words, excluding those portions exempted by the rule.

Dated:  November 17, 2023

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HWG LLP
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically with the Clerk of

Court using the CM/ECF system which will send notification of such filing to all

registered users.

Dated: November 17, 2023

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HWG LLP
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com