UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| VICTOR VOE, by and through his parents and next friends, Vanessa Voe and Vance Voe; *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>THOMAS MANSFIELD, in his official capacity as Chief Executive Officer of the North Carolina Medical Board; *et al.*,<br><br>*Defendants*,<br><br>and<br><br>PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives,<br><br>*Intervenor-Defendants*. | CASE NO. 1:23-cv-864<br><br><br>**INTERVENOR-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF HIPAA QUALIFIED PROTECTIVE ORDER** |

**NATURE OF THE MATTER BEFORE THE COURT**

Intervenor-Defendants respectfully move this Court, pursuant to Federal Rules of Civil Procedure 7(b) and 26(c) and Local Civil Rule 26.2, for entry of the HIPAA Qualified Protective Order. In accordance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the regulations promulgated thereunder, including specifically 45 C.F.R. §§ 164.512(e)(1)(ii)(B) and 164.512(e)(1)(v), such a HIPAA Qualified Protective Order would facilitate the exchange of documents and information that are the subject of the order and limit their use or disclosure.

Such an order is appropriate here. The requested HIPAA Qualified Protective Order

1

is modeled on orders entered in cases challenging laws similar to S.L. 2023-111 (H.B. 808). Despite opposing entry of the HIPAA Qualified Protective Order, Plaintiffs have already declined on HIPAA grounds to answer questions about Dr. Smith's patients, whom Plaintiff Dr. Smith claims to represent as a third-party in this litigation. The lack of a specific HIPAA Qualified Protective Order is likely to impede the ability of Intervenors to obtain relevant discovery that would include protected health information ("PHI") of minors treated in this State or by individuals whom Plaintiffs are likely to call as witnesses. Accordingly, Intervenors respectfully ask the Court to enter the HIPAA Qualified Protective Order.

## QUESTION PRESENTED

Whether the Court should enter the attached HIPAA Qualified Protective Order.

## STATEMENT OF FACTS

During this litigation, Plaintiffs have repeatedly refused to produce documents or information relevant to the litigation due to HIPAA. Most significantly, Plaintiffs have asserted that Plaintiff Dr. Smith "is bringing claims in" Dr. Smith's "personal capacity on behalf of" Dr. Smith's "patients." Second Am. Compl., Doc. 71, ¶ 16 ("SAC"). They have alleged that Dr. Smith's patients include "approximately 30" who "are adolescents who need" what Plaintiffs refer to as "gender-affirming care" and that "approximately five" of Dr. Smith's "patients depend on Medicaid to fund their gender-affirming healthcare." *Id.* ¶ 168. Plaintiffs' filings include numerous allegations about Dr. Smith's patients, including their conditions and conversations with Dr. Smith; Dr. Smith's treatment of those patients; and the ability of those patients' parents to represent their children's interests. *E.g.*, Pls'. Mem. Supporting Prelim. Inj. Mot., Doc. 14-1, at 22; Smith Decl., Doc. 14-8, ¶¶ 5-30;

Smith Suppl. Decl., Doc. 45-7. Yet when Intervenors have asked Plaintiffs about the patients that Dr. Smith is supposed to be representing in this case as a third-party, Plaintiffs repeatedly have invoked HIPAA. *See, e.g.*, Smith Dep. Tr., Doc. 66-2, at 68:12-69:6 (refusing, on instruction of counsel for Plaintiffs, to provide the age or approximate age of relevant patients beyond that they were "adolescents"); *id.* at 73:12-74:12 (refusing, on instruction of counsel for Plaintiffs, to answer whether relevant patients have depression even though Dr. Smith had just answered whether they have autism). Plaintiffs also included a HIPAA objection to Intervenors' requests for production. So far, Plaintiffs appear to have only provided medical documentation for Victor Voe and Joy Doe, not for any of the patients that Dr. Smith claims to represent as a Plaintiff in this litigation.

Intervenors appreciate the sensitivity of PHI. During Rule 26(f) report negotiations in January 2024, Intervenors raised their desire to seek entry of a HIPAA qualified protective order. Initially, Plaintiffs raised their concern that a HIPAA qualified protective order would not be as protective as the existing Stipulated Confidentiality Agreement and Protective Order. So Intervenors offered to draft a HIPAA qualified protective order that incorporated terms from and that was at least as protective as the Stipulated Confidentiality Agreement and Protective Order. Intervenors pointed out that related litigation, such as the litigation of Alabama's similar law, have involved the entry of a HIPAA qualified protective order in addition to another protective order. *See* HIPAA Qualified Protective Order, *Boe v. Marshall*, No. 2:22-cv-184 (M.D. Ala. July 19, 2022), *previously titled Eknes-Tucker v. Marshall*, Doc. 138 (attached here as Exhibit A).

Plaintiffs then raised a new concern that a HIPAA qualified protective order would

3

Case 1:23-cv-00864-LCB-LPA   Document 83   Filed 04/16/24   Page 3 of 15

allow for collection of medical records from providers without the ability of Plaintiffs to first redact sensitive information that is irrelevant to the case, such as irrelevant information about family members. Intervenors agreed to clarify in the HIPAA qualified protective order that Plaintiffs will have the ability to review otherwise produced medical records, if there are any, about the Minor Plaintiffs, Parent Plaintiffs, and Minor and Parent Plaintiffs' family members before such information is filed with the Court.

Plaintiffs still objected to an order that did not give them the ability to pre-review and redact information about Minor Plaintiffs, Parent Plaintiffs, and their family members before a third-party produced it to Intervenors. Given the then-approaching deadline to submit the Joint Rule 26(f) Report, the parties "agree[d] to meet and confer regarding a potential joint motion to enter a HIPAA Qualified Protective Order. Each party reserve[d] the right to seek relief from the Court if the parties are unable to reach agreement." Joint Rule 26(f) Report, Doc. 67, at 7.

At the beginning of February 2024, Intervenors sent Plaintiffs and the other Defendants a proposed Stipulated HIPAA Qualified Protective Order that is substantively the same as the HIPAA Qualified Protective Order that Intervenors are submitting to the Court. The provisions tracked the Stipulated Confidentiality Agreement and Protective Order in this case and the stipulated HIPAA qualified protective order in the equivalent Alabama case, *see* Ex. A. Intervenors added a provision—Section 7. Non-Party Production of Plaintiff PHI—to protect the PHI of Minor Plaintiffs, Parent Plaintiffs, or Parent Plaintiffs' other children that was modeled on the designation-correction procedure plaintiffs agreed to in litigation regarding Tennessee's equivalent law, where several of

4

Plaintiffs' counsel were also representing plaintiffs. *See* Joint Mot. for Protective Order, *L.W. v. Skrmetti*, No. 3:23-cv-376 (M.D. Tenn. May 5, 2023), Doc. 85 (Lambda Legal counsel joining motion) (attached here as Exhibit B); Protective Order at 3-4, *L.W. v. Skrmetti*, No. 3:23-cv-376 (M.D. Tenn. May 8, 2023), Doc. 87 (including designation-correction procedure in Section 4) (attached here as Exhibit C).

Plaintiffs still refused to agree to the Stipulated HIPAA Qualified Protective Order, claiming it was overbroad. The parties met and conferred on February 22, 2024. Intervenors reiterated their desire for such an order to facilitate and protect the production of PHI, including PHI regarding Plaintiff Dr. Smith's patients at UNC Health and UNC School of Medicine, the patients of witnesses such as Dr. Adkins (who practices at Duke and was both a fact and putative expert declarant for Plaintiffs at the preliminary-injunction stage), and Minor Plaintiffs to the extent such information was not accessible to Minor Plaintiffs during discovery. Plaintiffs agreed to reach out to third-parties such as UNC Health and UNC School of Medicine about the Stipulated HIPAA Qualified Protective Order and get back to Intervenors with their final position.

On March 7, 2024, Intervenors inquired to see when Plaintiffs would be able to get back with an answer. On Friday, March 15, Plaintiffs briefly responded that they would not agree to the Stipulated HIPAA Qualified Protective Order because its terms were too broad and would also apply to the PHI of non-parties. That same day, despite the existence of the protective order already issued in this case, Plaintiffs responded to Intervenors' requests for production and included a HIPAA objection. Plaintiffs provided some medical records regarding Victor Voe and Joy Doe. While Plaintiffs agreed to make further productions on

a rolling basis, they have apparently not provided, to date, any documentation regarding Plaintiff Dr. Smith's patients or their treatment by Dr. Smith.

## ARGUMENT

The Court should enter the proposed HIPAA Qualified Protective Order. As Plaintiffs explained when they sought entry of the Stipulated Confidentiality Agreement and Protective Order, "protective orders shielding personal and sensitive information 'encourage full disclosure of all relevant evidence in order to secure the just, speedy, and inexpensive determination of civil disputes.'" Mot. for Entry of Protective Order, Doc. 58, at 2 (quoting *In re Grand Jury Subpoena*, 836 F.2d 1468, 1472 (4th Cir. 1988)). The HIPAA Qualified Protective Order would accomplish the same objective for PHI. Entry of a qualified protective order is precisely what HIPAA envisioned for litigation. *See* 45 C.F.R. § 164.512(e)(1). The proposed HIPAA Qualified Protective Order is a normal part of litigation involving PHI. Plaintiffs' attempt to shield Plaintiff Dr. Smith's patients from run-of-the-mill discovery and to impede the discovery of other information from the institutions where their likely witnesses work is inconsistent with their insistence that Dr. Smith can represent patients in this litigation and with their desire for statewide relief against enforcement of S.L. 2023-111.

### I. HIPAA Requires Entry of a Qualified Protective Order Here.

Intervenors understand and agree that minors' protected health information ("PHI") qualifies for designation as protected under Rule 26(c). That is especially true because, other than Victor Voe and Joy Doe, the parents of the minors whom Plaintiffs claim to represent have not consented to their involvement in this litigation. *See* Smith Dep. Tr. at

57:2-6 (confirming "no parent has specifically authorized" Dr. Smith "to represent their minor children's interest in this litigation").

Good cause exists for restricting dissemination of such minors' PHI. The general rule of HIPAA is that "a covered entity may not use or disclose protected health information without an authorization that is valid under" HIPAA. 45 C.F.R. § 164.508(a)(1). HIPAA acknowledges, however, that production of PHI is often necessary in judicial proceedings. "A covered entity may disclose protected health information in the course of any judicial" proceeding (1) "[i]n response to an order of a court"; or (2) "[i]n response to a subpoena, discovery request, or other lawful process" if the covered entity either (A) "receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request[,]" or (B) "receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order." *Id.* § 164.512(e)(1).

Here, Intervenors cannot provide a covered entity—such as UNC Health or UNC School of Medicine—with satisfactory assurance under 45 C.F.R. § 164.512(e)(1)(ii)(A) that Intervenors have given notice to Dr. Smith's patients because Intervenors do not know who they are. Plaintiffs have so far refused to provide that information, even subject to the existing Stipulated Confidentiality Agreement and Protective Order.

Thus, Intervenors will need to obtain entry of a HIPAA qualified protective order, *id.* § 164.512(e)(1)(i), or provide a covered entity satisfactory assurance that Intervenors

7

have made reasonable efforts to secure a qualified protective order, *id.* § 164.512(e)(1)(ii)(B). Under HIPAA such an order must "[p]rohibit[] the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested" and "[r]equire[] the return to the covered entity or destruction of the protected health information." *Id.* § 164.512(e)(1)(v).

HIPAA gives the parties two options to demonstrate reasonable efforts to secure a HIPAA qualified protective order. Intervenors must demonstrate either (A) that the "parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court"; or (B) that the "party seeking the protected health information has requested a qualified protective order from such court." *Id.* § 164.512(e)(1)(iv).

In seeking entry of the HIPAA Qualified Protective Order, Intervenors are attempting to comply with HIPAA and alleviate the concern Plaintiffs repeatedly raise when Intervenors seek medical information about any individual other than Victor Voe or Joy Doe. The HIPAA Qualified Protective Order is normal for litigation of this sort and is modeled primarily on the Stipulated Confidentiality Agreement and Protective Order from this case and the Stipulated HIPAA Qualified Protective Order from Alabama's equivalent case, Ex. A. If anything, this HIPAA Qualified Protective Order is even more protective of Minor Plaintiffs and Parent Plaintiffs by including a procedure for expanding and correcting confidentiality designations for their PHI and the PHI of their family members. *See* Proposed HIPAA Qualified Protective Order at 9 (Section 7 Non-Party Production of Plaintiff PHI). Counsel for Plaintiffs agreed to a similar procedure in the equivalent

8

Tennessee case. *See* Ex. C at 3-4 (including designation-correction procedure in Section 4).

## II. Plaintiffs' Litigation Decisions Have Created a Need for the Order.

Intervenors have sought the HIPAA Qualified Protective Order to obtain information important to their defense of S.L. 2023-111. Plaintiffs have "placed at issue" at least the mental and physical conditions and treatment of Victor Voe, Joy Doe, and Dr. Smith's patients at UNC Health and UNC School of Medicine. *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:17-cv-452, 2018 WL 11449628, at *2 (M.D.N.C. June 5, 2018). Their conditions and treatment are "relevant to this action, including the issue of standing." *Id.* Moreover, Plaintiffs have identified Dr. Deanna Adkins, who is the Director of the Duke Child and Adolescent Care Clinic, as both an expert and fact witness, and their requested relief would extend statewide to facially enjoin enforcement of S.L. 2023-111 throughout North Carolina. Throughout this case, Plaintiffs have disclosed health information about Dr. Smith's patients when it benefited them. Yet Plaintiffs have so far refused to provide the specific information necessary to verify their claims about Dr. Smith's patients. They apparently want Intervenors simply to take Dr. Smith's word about them.

That is not how discovery works. Plaintiffs are "not permitted to both hide behind health privacy and rely on [their] medical conditions creating both a shield and sword in this lawsuit." *Id.* at *3 (requiring plaintiff either to disclose relevant medical information or have all testimony and declarations about medical conditions struck from the case); *see also United States v. Town of Chapel Hill*, No. 1:05-cv-1083, 2006 WL 2714192, at *3

9

(M.D.N.C. Sept. 22, 2006) (compelling production of medical records, subject to protective order "addressing the privacy and confidentiality concerns of the parties regarding release of medical records," after plaintiff put health information of others at issue).

The reasons Plaintiffs have offered for opposing a HIPAA Qualified Protective Order have shifted over time as Intervenors have attempted to address Plaintiffs' expressed concerns. But they have settled on two arguments: (1) that such an order is overbroad because personal medical information is extremely sensitive, and (2) that it might lead to discovery of non-plaintiff patients' information. Both objections misunderstand the point of a protective order.

A protective order does not resolve all disputes regarding objections to a discovery request. The proposed HIPAA Qualified Protective Order repeatedly preserves the ability to resist a discovery request on grounds such as overbreadth and relevance. *See, e.g.*, Proposed HIPAA Qualified Protective Order at 3 ("The parties are hereby authorized through discovery to receive, subpoena, and transmit PHI, *to the extent that such information is otherwise discoverable and not objectionable*, subject to all conditions outlined herein." (emphasis added)); *id.* at 4 (requiring disclosure of PHI in response to subpoena "to which no objection has been timely filed"); *id.* (requiring response to interrogatories, requests for production, and requests for copies with PHI "without waiver of any right to prepayment of costs or any other appropriate objection or privilege that may be timely asserted"); *id.* at 5 (requiring deponents to disclose PHI "without waiver of any right to the prepayment of costs or any other appropriate objection or privilege that may be timely asserted").

10

The HIPAA Qualified Protective Order simply protects PHI and assures, subject to any non-HIPAA objection, that there will be "full disclosure of all relevant evidence." *In re Grand Jury Subpoena*, 836 F.2d at 1472. "Absent such orders," as has already happened during Dr. Smith's deposition, "witnesses would be deterred from providing essential testimony in civil litigation, thus undermining the adversary process." *Id.* Without the HIPAA Qualified Protective Order in place, Plaintiffs' apparent position is that Intervenors cannot even obtain discovery of Plaintiff Dr. Smith's patients equivalent to the discovery obtained regarding Plaintiffs Victor Voe and Joy Doe. Such an arrangement is inequitable.

A non-party of course can attempt to quash a subpoena served by Intervenors. But it is not the case that non-parties categorically do not possess documents containing PHI relevant to Plaintiffs' claims. UNC Health and UNC School of Medicine, for example, would almost certainly have documents concerning the patients Dr. Smith claims to treat there. As Plaintiff Dr. Smith is purporting to represent those patients' interests in this lawsuit, PHI and other documentation concerning Dr. Smith's patients is highly relevant to this case. Despite Plaintiffs claiming not to have the medical information of Dr. Smith's patients in their possession, custody, or control, they have identified "approximately 78" of those patients as transgender with "approximately 30" as "adolescents who need gender-affirming care" and "approximately five" patients "depend[ing] on Medicaid to fund their gender-affirming healthcare." SAC ¶ 168.

If Plaintiffs are to continue claiming to represent those patients' interests in this case, then Intervenors have a right to obtain discovery from UNC Health and UNC School of Medicine at least concerning those patients' conditions and treatment by Dr. Smith and

other medical professionals at UNC Health and UNC School of Medicine. It is fundamentally inequitable for Plaintiffs to disclose health information about Dr. Smith's patients when they think disclosure might favor Plaintiffs' case and then hide behind HIPAA when it would not. *See, e.g.*, Smith Dep. Tr. at 73:12-74:12 (refusing, on instruction of counsel for Plaintiffs, to answer whether relevant patients have depression even though Dr. Smith had just answered that those patients do not have autism).

Entering a HIPAA Qualified Protective Order is far preferable to piecemeal litigation of HIPAA every time PHI comes up in this case. Intervenors might, for example, seek discovery from Duke regarding treatment of gender dysphoric minors by Dr. Adkins, who served as both an expert *and* fact declarant for Plaintiffs at the preliminary-injunction stage. Dr. Adkins is the Director of the Duke Child and Adolescent Care Clinic here in North Carolina and provided testimony regarding practices and treatment at the Duke Gender Care Clinic. *See, e.g.*, Adkins Decl., Doc. 14-2, ¶¶ 41-48 ("Practice at Duke Gender Care Clinic"); Adkins Rebuttal Decl., Doc. 45-3, ¶¶ 8-10. Dr. Adkins willingly became involved in this case at the invitation of Plaintiffs, not Intervenors. Other issues regarding PHI might also arise during discovery.

Granting Intervenors' motion would stop Plaintiffs from ducking behind HIPAA but still allow Plaintiffs or any non-party to identify other objections to discovery requests. And the HIPAA Qualified Protective Order would provide all the protections that HIPAA requires for PHI to be disclosed in litigation.

## CONCLUSION

Intervenors respectfully request the Court to grant the motion and enter the HIPAA

Qualified Protective Order.

Dated: April 16, 2024

/s/ Craig D. Schauer
Craig D. Schauer (State Bar No. 41571)
DOWLING PLLC
3801 Lake Boone Tr., Suite 260
Raleigh, NC 27607
(919) 529-3351
cschauer@dowlingfirm.com

*Local Civil Rule 83.1 Counsel
for Intervenor-Defendants*

Respectfully submitted,

David H. Thompson
Peter A. Patterson
Brian W. Barnes
Nicole J. Moss
Clark L. Hildabrand
COOPER AND KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Intervenor-Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Memorandum, including body, headings, and footnotes, contains 3,123 words as measured by Microsoft Word.

/s/ Craig D. Schauer
Craig D. Schauer
*Counsel for Intervenors*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on April 16, 2024, I electronically filed the foregoing Memorandum with the Clerk of the Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

/s/ Craig D. Schauer
Craig D. Schauer
*Counsel for Intervenors*
