EXHIBIT 86 -
DHHS Workgroup
Emails 4
(public document)

| | |
|---|---|
| **From:** | Tilson, Betsey |
| **To:** | Deanna Adkins, M.D. |
| **Subject:** | RE: [External] Re: request feedback by Sunday |
| **Date:** | Sunday, June 18, 2023 7:24:00 PM |
| **Attachments:** | image001.png |
| | image002.png |

Thank you!

Elizabeth Cuervo Tilson, MD, MPH
State Health Director
Chief Medical Officer
NC DHHS

---

**From:** Deanna Adkins, M.D. <deanna.adkins@duke.edu>
**Sent:** Sunday, June 18, 2023 5:02 PM
**To:** Tilson, Betsey <Betsey.Tilson@dhhs.nc.gov>
**Subject:** Re: [External] Re: request feedback by Sunday

> **CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

1. **90-21.141 Include an exception iii. For minors currently in care and iv. And v. for "minors with severe gender dysphoria"**
   a. (c) This section does not apply to the following:
      1. The good-faith medical decision of a parent or guardian of a minor born with a medically verifiable genetic disorder of sexual development, including any of the following: (1) A minor with external biological sex characteristics that are irresolvably 15 ambiguous, such as a minor born having 46 XX chromosomes with 16 virilization, 46 XY chromosomes with undervirilization, or having both 17 ovarian and testicular tissue. 18 (2) When a physician has otherwise diagnosed a disorder of sexual development, 19 in which the physician has determined through genetic testing that the minor 20 does not have the normal sex chromosome structure for male or female sexes.
      2. The treatment of any infection, injury, disease, or disorder that has been caused by or exacerbated by the performance of gender transition procedures, whether or not these procedures were performed in accordance with state and federal law.
      3. Minors currently receiving puberty blockers or hormonal therapy for transgender care
      4. Pubertal blocking for minors with severe gender dysphoria if:
         1. The minor has been diagnosed as suffering from severe gender dysphoria meeting at least 6 of the 8 DSM-5 criteria, for at least 6 months after onset of puberty, and that was worsened by the onset of puberty, by no

DHHS_011926

fewer than two providers: one medical and with at least one being a mental health provider. Medical providers can include a pediatrician, adolescent medicine specialist, or family physician with relevant training in diagnosis and treatment of gender dysphoria, and both having relevant training in the diagnosis and treatment of severe gender dysphoria in adolescents;

2. The diagnosing medical professionals express in written opinions that treatment with pubertal modulating is medically necessary to treat the minor's psychiatric symptoms and limit self-harm, or the possibility of self-harm, by the minor; has confirmed that puberty has started in the adolescent (at least Tanner stage 2) and has confirmed that there are no medical contraindications of puberty blocking treatment
3. Any coexisting psychological, medical, or social problems that could interfere with treatment (e.g., that may compromise treatment adherence) have been addressed, such that the minor's situation and functioning are stable enough to start treatment
4. The minor has sufficient mental capacity to give informed consent to this (reversible) treatment
5. The minor, the minor's parent(s), legal guardians, or other persons charged with medical decision-making for the minor, have been informed of the effects and side effects of treatment (including potential loss of fertility if the individual subsequently continues with sex hormone treatment) and options to preserve fertility and have given informed consent for pubertal modulating and the minor's parent(s), legal guardian(s), or person or other persons charged with medical decision-making for the minor are involved in supporting the adolescent throughout the treatment process
6. Any use of gender altering medication is for purposes of pubertal modulating limited to the lowest titratable dosage necessary to treat the psychiatric condition and
7. Notwithstanding the provisions of paragraphs (A) through (D) of this subdivision where the minor is assessed by a medical provider involved in the care as prepubescent, hormonal treatment may not be provided

5. Hormonal therapy for minors with severe gender dysphoria if:
   1. No fewer than two providers: at least one medical and one mental health provider and the medical provider being either a pediatrician, adolescent medicine specialist, or family physician with relevant training in diagnosis and treatment of gender dysphoria, and both having relevant training in the diagnosis and treatment of severe gender dysphoria in adolescents confirm the persistence of severe gender dysphoria;
   2. The diagnosing medical professionals express in written opinions that treatment with hormonal therapy is medically necessary to treat the minor's psychiatric symptoms and limit self-harm, or the possibility of self-harm, by the minor; has confirmed that puberty has started in the adolescent (at least Tanner stage 2) and has confirmed that there are no

DHHS_011927

<span style="color:red">
    medical contraindications to treatment
3. Any coexisting psychological, medical, or social problems that could interfere with treatment (e.g., that may compromise treatment adherence) have been addressed, such that the minor's situation and functioning are stable enough to start treatment
4. The minor has sufficient decision making capacity to estimate the consequences of this (partly) irreversible treatment, weigh the benefits and risks, and give informed consent to this (partly) irreversible treatment
5. The minor has sufficient decisional capacity to give informed consent to the has been informed of the (irreversible) effects and side effects of treatment (including potential loss of fertility and options to preserve fertility) has given informed consent and (particularly when the adolescent has not reached the age of legal medical consent, depending on applicable legislation)
6. The minor, the minor's parent(s), legal guardian(s), or other persons charged with medical decision-making for the minor, have been informed of the (irreversible) effects and side effects of treatment (including potential loss of fertility and options to preserve fertility) and have given informed consent for hormonal therapy and the minor's parent(s), legal guardian(s), or person or other persons charged with medical decision-making for the minor are involved in supporting the adolescent throughout the treatment process
7. Any use of hormonal therapy medication is limited to the lowest titratable dosage necessary to treat the psychiatric condition and
8. Notwithstanding the provisions of paragraphs (A) through (D) of this subdivision where the minor is assessed by a medical provider involved in the care to be prepubescent, hormonal treatment may not be provided;
</span>

this is good. i made these two small edits for clarification
let me know if that is ok

thanks for your work on this Betsey!
deanna


**Deanna W. Adkins, MD**
**Associate Professor of Pediatrics**
**Duke Children's**
**Pronouns: She, her, hers**

**Director Duke Child and Adolescent Gender Care Clinic**
**Co-Director Duke Gender Health and Wellness Program**



 The anti-racism ribbon is my pledge to stand against racism in all its forms, to be self-aware and to make equitable choices daily.

**Voicemail 919-684-8225**
**fax 919-684-8613**
**appointments 919-668-4000**
**Emergencies: 919-684-8111**
**Endocrine pager 0716; Diabetes pager 2650**

**DUMC box 102820**
**Durham, NC 27710**

---

**From:** Tilson, Betsey <Betsey.Tilson@dhhs.nc.gov>
**Sent:** Friday, June 16, 2023 5:18 PM
**To:** Deanna Adkins, M.D. <deanna.adkins@duke.edu>
**Subject:** RE: [External] Re: request feedback by Sunday

Thank you so much. I am incredibly grateful and incredibly sorry that we have to do this. The Senate has said they intend to add language back in banning hormonal therapy and they are meeting on Tuesday.

Elizabeth Cuervo Tilson, MD, MPH
State Health Director
Chief Medical Officer
NC DHHS

---

**From:** Deanna Adkins, M.D. <deanna.adkins@duke.edu>
**Sent:** Friday, June 16, 2023 5:16 PM
**To:** Tilson, Betsey <Betsey.Tilson@dhhs.nc.gov>
**Subject:** [External] Re: request feedback by Sunday

> **CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

Sorry yes. I am at diabetes camp right now but can get to it by then for you

Deanna

On Jun 16, 2023, at 1:14 PM, Tilson, Betsey <Betsey.Tilson@dhhs.nc.gov> wrote:

I am very sorry, but our time line got shortened. Could you please get any feedback to me by Sunday pm.

Elizabeth Cuervo Tilson, MD, MPH
State Health Director
Chief Medical Officer
NC DHHS

---

**From:** Tilson, Betsey
**Sent:** Thursday, June 15, 2023 5:08 PM
**To:** rbrown@avancecare.com; Figler, Brad <figler@unc.edu>; deanna.adkins@duke.edu; emily.vanderschaaf@gmail.com; drsved@aol.com; Rhett10@mac.com; Jennifer Abbott <jenabbo@gmail.com>; Vander Schaaf, Emily <Emily_VanderSchaaf@med.unc.edu>; Wong, Charlene <Charlene.Wong@dhhs.nc.gov>
**Subject:** more feedback on transgender care by Monday am, please

**By Monday am**

If similar language restricting hormonal treatment of gender dysphoria and transgender that was in early House bills is introduced in the Senate (black text), please give me feedback on the proposed <span style="color:red">red edits</span> that could be suggested.

1. **90-21.141 Include an exception <span style="color:red">iii. For minors currently in care and iv. And v. for "minors with severe gender dysphoria"</span>**
    a. (c) This section does not apply to the following:
        1. The good-faith medical decision of a parent or guardian of a minor born with a medically verifiable genetic disorder of sexual development, including any of the following: (1) A minor with external biological sex characteristics that are irresolvably 15 ambiguous, such as a minor born having 46 XX chromosomes with 16 virilization, 46 XY chromosomes with undervirilization, or having both 17 ovarian and testicular tissue. 18 (2) When a physician has otherwise diagnosed a disorder of sexual development, 19 in which the physician has determined through genetic testing that the minor 20 does not have the normal sex chromosome structure for male or female sexes.

2. The treatment of any infection, injury, disease, or disorder that has been caused by or exacerbated by the performance of gender transition procedures, whether or not these procedures were performed in accordance with state and federal law.
3. Minors currently receiving puberty blockers or hormonal therapy for transgender care
4. Pubertal blocking for minors with severe gender dysphoria if:
   1. The minor has been diagnosed as suffering from severe gender dysphoria meeting at least 6 of the 8 DSM-5 criteria, for at least 6 months after onset of puberty, and that was worsened by the onset of puberty, by no fewer than two medical or mental health providers with at least one being a mental health provider or pediatrician, adolescent medicine specialist, or family physician with relevant training in diagnosis and treatment of gender dysphoria, and both having relevant training in the diagnosis and treatment of severe gender dysphoria in adolescents;
   2. The diagnosing medical professionals express in written opinions that treatment with pubertal modulating is medically necessary to treat the minor's psychiatric symptoms and limit self-harm, or the possibility of self-harm, by the minor; has confirmed that puberty has started in the adolescent (at least Tanner stage 2) and has confirmed that there are no medical contraindications of puberty blocking treatment
   3. Any coexisting psychological, medical, or social problems that could interfere with treatment (e.g., that may compromise treatment adherence) have been addressed, such that the minor's situation and functioning are stable enough to start treatment
   4. The minor has sufficient mental capacity to give informed consent to this (reversible) treatment
   5. The minor, the minor's parent(s), legal guardians, or other persons charged with medical decision-making for the minor, have been informed of the effects and side effects of treatment (including potential loss of fertility if the individual subsequently continues with sex hormone treatment) and options to preserve fertility and have given informed consent for pubertal modulating and the minor's parent(s), legal guardian(s), or person or other persons charged with medical decision-making for the minor are involved in supporting the adolescent throughout the treatment process
   6. Any use of gender altering medication is for purposes of pubertal modulating limited to the lowest titratable dosage

DHHS_011931

necessary to treat the psychiatric condition and
7. Notwithstanding the provisions of paragraphs (A) through (D) of this subdivision where the minor is assessed by a medical provider involved in the care as prepubescent, hormonal treatment may not be provided
5. Hormonal therapy for minors with severe gender dysphoria if:
   1. No fewer than two medical or mental health providers with at least one being a mental health provider or pediatrician, adolescent medicine specialist, or family physician with relevant training in diagnosis and treatment of gender dysphoria, and both having relevant training in the diagnosis and treatment of severe gender dysphoria in adolescents confirm the persistence of severe gender dysphoria;
   2. The diagnosing medical professionals express in written opinions that treatment with hormonal therapy is medically necessary to treat the minor's psychiatric symptoms and limit self-harm, or the possibility of self-harm, by the minor; has confirmed that puberty has started in the adolescent (at least Tanner stage 2) and has confirmed that there are no medical contraindications to treatment
   3. Any coexisting psychological, medical, or social problems that could interfere with treatment (e.g., that may compromise treatment adherence) have been addressed, such that the minor's situation and functioning are stable enough to start treatment
   4. The minor has sufficient decisional capacity to estimate the consequences of this (partly) irreversible treatment, weigh the benefits and risks, and give informed consent to this (partly) irreversible treatment
   5. The minor has sufficient decisional capacity to give informed consent to the has been informed of the (irreversible) effects and side effects of treatment (including potential loss of fertility and options to preserve fertility) has given informed consent and (particularly when the adolescent has not reached the age of legal medical consent, depending on applicable legislation)
   6. The minor, the minor's parent(s), legal guardian(s), or other persons charged with medical decision-making for the minor, have been informed of the (irreversible) effects and side effects of treatment (including potential loss of fertility and options to preserve fertility) and have given informed consent for hormonal therapy and the minor's parent(s), legal guardian(s), or person or other persons charged with medical decision-making for the minor are involved in supporting the adolescent throughout the treatment

DHHS_011932

<ol start="6">
<li>process</li>
<li><span style="color:red">Any use of hormonal therapy medication is limited to the lowest titratable dosage necessary to treat the psychiatric condition and</span></li>
<li><span style="color:red">Notwithstanding the provisions of paragraphs (A) through (D) of this subdivision where the minor is assessed by a medical provider involved in the care to be prepubescent, hormonal treatment may not be provided;</span></li>
</ol>

Elizabeth Cuervo Tilson, MD, MPH
State Health Director
Chief Medical Officer
NC DHHS

---

**From:** Tilson, Betsey
**Sent:** Monday, May 1, 2023 5:33 PM
**To:** Cheely, George <gcheely@amerihealthcaritas.com>; rbrown@avancecare.com; Dowler, Shannon <Shannon.Dowler@dhhs.nc.gov>; kerry.landry@catalystnc.com; Cheely, George <gcheely@amerihealthcaritasnc.com>; William W. Lawrence <William.W.Lawrence@carolinacompletehealth.com>; Ogden, Michael <michael.ogden@healthybluenc.com>; Komives, Eugenie M <Eugenie.Komives@wellcare.com>; White, Janelle R <Janelle.White@dhhs.nc.gov>; Taormina, Velma V <Velma.Taormina@dhhs.nc.gov>; Figler, Brad <figler@unc.edu>; richard_sutherland@med.unc.edu; erin_carey@med.unc.edu; adeyemi_ogunleye@med.unc.edu; deanna.adkins@duke.edu; emily.vanderschaaf@gmail.com; drsved@aol.com; Rhett10@mac.com; samar UHC CMO <samar_muzaffar@uhc.com>; Jennifer Abbott <jenabbo@gmail.com>; Vander Schaaf, Emily <Emily_VanderSchaaf@med.unc.edu>; morgan.o.carnes@gmail.com; Wong, Charlene <Charlene.Wong@dhhs.nc.gov>; Kimple, Kelly <kelly.kimple@dhhs.nc.gov>; Wilson, Walker <Walker.Wilson@dhhs.nc.gov>; Mattson, Gerri <gerri.mattson@dhhs.nc.gov>; Kansagra, Susan M <Susan.Kansagra@dhhs.nc.gov>; Cronin, Julie <Julie.Cronin@dhhs.nc.gov>; Niehaus, Virginia <virginia.niehaus@dhhs.nc.gov>; Brown, Carrie <carrie.brown@dhhs.nc.gov>; McCoy, Keith <Keith.McCoy@dhhs.nc.gov>
**Cc:** Gross, Matt <Matt.Gross@dhhs.nc.gov>; White, Janssen <janssen.white@dhhs.nc.gov>
**Subject:** Need feedback ASAP tonight
**Importance:** High

Colleagues

I need some quick feedback on this transgender bill – H808. **It will be heard tomorrow morning.** The original bill has language consistent with the other bills that prohibited

DHHS_011933

all transgender care and struck the minor consent law.  This one only limits surgical procedures for people under the age of 18 with some exceptions.

Could you please
1. Tell me if you think this would harm adolescents under 18.  How much surgical procedures are done for minors.  If they had the hormonal gender affirming care, would it be ok to wait for the surgeries?

2. There are some exceptions on the second page – would you add anything to the exceptions.

Elizabeth Cuervo Tilson, MD, MPH
State Health Director
Chief Medical Officer
NC DHHS

---

Email correspondence to and from this address is subject to the North Carolina Public Records Law and may be disclosed to third parties by an authorized State official. Unauthorized disclosure of juvenile, health, legally privileged, or otherwise confidential information, including confidential information relating to an ongoing State procurement effort, is prohibited by law. If you have received this email in error, please notify the sender immediately and delete all records of this email.